Madam Clerk, will you please call the first case? Good morning, Counsel. Good morning, Your Honor. Mark Sisek, C like Charlie, I-S-E-K, on behalf of Plaintiff Appellant Lori Lelis. My understanding is there's 20 minutes. My argument with rebuttal will take about 20 minutes. Very good, Mr. Sisek. Good morning, Your Honors. Charles Atwell, on behalf of the Defendant Board. In this particular case, I believe that my argument will take approximately 10 minutes. Very good. Mr. Sisek, you may proceed with your argument. May it please the Court. I would also like at the outset to reserve six minutes for rebuttal of my time. You can see we don't have a lot of cases. Nevertheless. The instant case concerns, in effect, two applications for a line-of-duty pension brought by a Cicero police officer, Lori Lelis, my client. The first was denied by the Defendant Pension Board on the grounds the plaintiff was not presently disabled. The second application, which was brought many years later in 2011 after Ms. Lelis' condition worsened, was dismissed outright by Defendant Pension Board on the grounds of they did not have the jurisdiction to hear the claim, collateral estoppel, and res judicata. This case turns on one point. Does Ms. Lelis' application deal with the same facts in her 1999 application, her earlier application, or do they involve a different claim arising out of different facts? The facts before the Court that I intend to show will show us clearly the latter. Specifically, her 2011 claim deals with is she disabled now after 11 years of suffering from a degenerative back injury? Is she disabled now after a subsequent diagnosis of lupus, which can affect the body's joints, including those in her back? So with those in mind, we are asking today that this Court reverse both the Board's dismissal of her 2011 application for a line-of-duty pension and the Circuit Court's affirmation of that decision. Briefly with the facts, Lelis was hired by the Cicero Police Department in 1986 and became a vested member of the Cicero Police Pension Fund at that time. On March 28, 1998, Lelis injured her back lifting a dead body onto a stretcher. In connection with that injury, on March 10, 1999, Lelis filed her first claim for a line-of-duty pension. In March of 2000, the Board denied Lelis' claim on the grounds that she was not disabled at that time. Lelis brought an action for administrative review in the Circuit Court of Cook County. In July of 2000, the Circuit Court affirmed the Board's decision, but they said expressly, if she becomes disabled at a later time, she can resubmit her application for a disability pension. And specifically, the Court noted that was the stance that the Board took going into the litigation. Between 2000 and 2011, Lelis' condition worsened over time. It's a degenerative injury and also because of an additional diagnosis of lupus. In March 5, 2011, Lelis filed a second application for a pension. The Board held three days' worth of hearings, and on November 18, 2011, the Board concluded it did not have jurisdiction because, in their view, this was simply Ms. Lelis asking the Court to revisit its decision in 1999 not to grant her a line-of-duty pension at that time. They also found that it was barred by res judicata and collateral estoppel. In December, Lelis filed a complaint for administrative review, and the Circuit Court affirmed the Board's decision. With respect to the argument, the Board had jurisdiction to hear the 2011 application because the Board never considered whether her progressively degenerative condition rendered her disabled at the present time. Specifically, the pension code at Section 5-3-114.1 indicates, hey, if a police officer is a result of sickness, accident, or injury incurred or resulting from the performance of an active duty, is found to be physically or mentally disabled for service in the police department, so as to render necessary his or her suspension from the retirement of the police officer. And it explains you can get a pension under those circumstances. Counsel, is there anywhere on the application that was filed on March 5, 2011, that you make reference to anything other than the March 28, 1998 accident or injury? She specifically wrote L-4-5 and L-5-S-1, disc disease, and it would be in the record C-144. And that would be to explain the precise nature of the injuries or illnesses complained of, i.e., parts of the body affected. But she doesn't make any reference to lupus in the application, does she? I think she does. In the application. Show it to me in the application. Let me see. I thought there was a reference. There may have been a reference in the application. I'm looking on pages 146 and 147 of the appendix. She does not make a mention of the lupus in the application. However, the application isn't the only thing that the board considered when it made its decision. What support do you have for that position? What case or statute? The board specifically says. The board specifically says. Counsel, do you have a case or statute that says we're supposed to look beyond the application? Well, the fact of the matter is I don't have one that specifically says you look beyond the application. I do note, however, that the board looked beyond the application and said so in its decision on November 18th. It says here, when they were considering whether the board had jurisdiction over Lelis's claim, there were several documents submitted into evidence. It included the application form, the reply to interrogatories and request of production, which were submitted simultaneously with the form. She submitted the interrogatories at the same time as the form. That would be at C245. Four letters Lelis wrote to the defendants about her claim and the memorandum of support of the board's jurisdiction to consider the application for line-of-duty pension disability benefits. And defendants thereafter state all evidence admitted in this cause has been fully considered by this board. So the board did go outside the application. I also note the application consists of about five lines. It's not the equivalent of a state court complaint where you have fact pleading, you have an infinite number of pages to explain the nature. It is expected that you explain the nature of your complaint. These are filled out by laypeople in five lines. Okay, the interrogatories are not dated, correct? The interrogatories may not be dated. Nevertheless, they were submitted simultaneously with the application. But you don't make reference in the application to the interrogatories? No, but they were submitted simultaneously. And the interrogatories are part of the record of the board? Correct. And that is what is typically reviewed as the record. In administrative review, you review the record of the administrative agency. Correct. Including any transcripts that may reflect what their comments were about what they were dealing with. Correct. And I would like to also point out the purpose of the pension code is it's to be construed liberally to favor the applicant's rights. It's beneficial in nature and should be construed liberally in favor of the pensioner's rights. That's the COSAC versus Retirement Board of Firemen and Annuity and Benefit Fund of Chicago. Courts have held that Section 3-114.1 requires a broad interpretation that encompasses a line of duty disability pension based on the aggravation of a preexisting physical condition. That's Olson versus City of Wheaton Police Pension Board. Here, you had the board try to read jurisdiction out, that it did not have jurisdiction. It's not trying, it's supposed to be trying to say, well, do we have, we're trying to be liberal and try and see if we have a grounds for jurisdiction. Here, they're trying to conservatively read it in a way to find that they don't have jurisdiction. That it is barred by res judicata. That it is barred by collateral estoppel. And that's contrary to the intent of the pension code. Here, the record should be read with the idea of we're trying to establish that she does have, that the board does have jurisdiction. That it's not barred by res judicata. That it's not barred by collateral estoppel. And I should point out, at the, in 2000, when this case, when the first application was on administrative review, the court specifically said that, that the board had said that she would not be barred by a judicial, some sort of judicial estoppel doctrine. Here, let me quote it exactly. C-168. As counsel for the board indicated, if in fact the plaintiff is unable to perform the duty to which she is assigned at a future date, Hughes-Lewis can resubmit her application for a disability pension. Further, here's another quote from the court at that time. Here, the issue decided in the prior adjudication in 2000, here. Any subsequent resubmission for a disability pension or resumption of full, fully duty work will not be judicially, she's got estoppel, estopped by plaintiff's position in these proceedings that she is at least temporarily disabled due to the fact that this position is not inconsistent with a later claim of disability to do light duty work or ability to do full duty work. So she should not be barred here by collateral estoppel or res judicata because, one, this is not the same claim, this is not the same claim she could have brought back in 1999 and 2000, because there's been 11 years of degeneration since then. But it's also not inconsistent with the claim that she was making previously. And to the contrary, if anybody should be estopped from saying that she can bring this claim, it should be the board which made a claim in a judicial setting and which derived a benefit from that saying and now is taking the contrary position that they don't, that she can't bring this claim because this was decided back then. I'd also like to point out that the fact that she has not presented evidence right now that she is disabled, like other doctors and stuff, is not, the other doctors' reports, is not an issue right now. Because we're not trying to decide right now, is she really disabled? This is just a threshold case. Does she get into the door? If and when the court is, or the board is found to have jurisdiction, she will be able to try to prove that she is disabled at that time. So to the degree that she hasn't presented proof that she is presently disabled, that's not relevant. The question is, has she made a claim? Has she made that threshold argument that gets her into the door? And that's it. I expected more questions. Thank you, counsel. Thank you. Good morning, Your Honors. Charles Atwill on behalf of the Cicero Pension Board. Good morning to you and my colleague. Just a couple brief comments in this. We can throw in the application. We can throw in the whole record, the letters from the applicant, basically attached or part of the application. The interrogatories, there's not a scintilla of evidence in this case that suggests that she's claiming anything other than she claimed back in 2000. Well, let me ask you. Counsel said that the interrogatories were a question of whose form that is part of the record? I have to assume they're part of the record, Judge, because we attached and missed part of the record. Well, my question is, he represented that that was submitted simultaneously with the application form, the two-page form. Do you think that's typically so? They are not submitted. It was not submitted simultaneously. It was submitted afterwards, because pursuant to the application, then the interrogatories were sent out to ask additional questions. But he filed an initial application before he filed the amended application, correct? I'm not sure if I understand. Filed the initial application. The application that we have is dated March 5, 2011, but it indicates it was amended. So there was a prior application filed in this case, correct? I can't answer that question unless it's in the record. It's clearly not in the record, but the application I'm looking at on page A146 of the appendix. I believe the reason that was done is because the letter was filed by the applicant, which are attached as the exhibits, and because that was not a formal application, we submitted an application to her. I believe that that is the way that it happened. So she just filed a letter requesting, which we decided was basically a request for reconsideration of the 2000. We submitted, which would be the amended application, asked to please fill out this form. So, you know, it's unclear, but so is it possible she submitted a letter saying, I want duty disability because I am injured? Mechanically, the board didn't consider that a formal application. They sent her the application along with the interrogatories and request, and that she may have filled them all out and sent them back in to get the process going? I believe you are correct. With the exception, I believe that the interrogatories were sent out after the application. I may be wrong on that. So is the letter that she sent initially a part of the record? Is the letter? The letter that generated the board tendering the amended application, which she refers to as an amended application, is that letter in the record? I believe it's appendix 142. Yes, I believe you are correct on that, those letters. There are three letters that were attached. The letter dated January 11, 2001, where she said, Trustees, I am here requesting that a duty-related disability pension be awarded to me. Correct. Wait a minute. What's A142? I reference those as 140 to 144. I bet they're referenced in there. There's a January 11, 2011, March 7, 2011, March 14, 2011 letters. The letter dated January 11, 2011, did not make the board tender the interrogatories that are part of this record. You just tendered the application and told her to complete the application. Did you send her any correspondence? Well, I believe that the only correspondence that was sent was to indicate to please file out a formal application. But that's not part of the record. I don't believe that it is. I don't believe that it is. So in any event, it's our position that there's no evidence in this case asking for relief based upon a current condition or a change of circumstances. And when we talk about the lupus in this case, the reference to that, and I point out to the record, page 75 to 76, it's very clear when that question was asked of her, do you want to proceed on the lupus issue that you've talked about? She said no. She's basically standing on her application. And in the event she is unsuccessful on this, she would then file a new application dealing with lupus. That's very clear, 75, 76. Now, that was made before she had Mr. Moran come in and formally represent her, correct? Yes, but that position's never changed. She had every opportunity. We agreed to extend it. She was provided notice of hearing due process. At that time, Mr. Moran was representing her, but he could not be present. She elected to proceed to go ahead with that. And then Mr. Moran later submitted a memorandum. That is correct. Laying out the lupus issue and basically an aggravation of a preexisting condition. Well, nothing really suggesting a change of circumstances, but not really suggesting what the change of circumstances was in this particular case. Do we need to know that after evidence? Well, I mean, it seems to me that what we're dealing with is a preliminary situation in a pension board setting where the officer, unrepresented, is claiming a disability, rendering her unable to perform her duties, and the pension board, through its mechanisms, its paperwork, et cetera, starts the process in evaluating whether the officer can establish his or her claim. Well, at least they've got to address something and identify something. And she's basically dissatisfied with the board's decision back in 2000. That's all she's addressed. I think she's made that very clear on the record. There was nothing new. And the reference to the light duty, as counsel had talked about, and the circuit court's previous decision, light duty was never an issue in this particular case back in 2000. It is an issue now. In 2000, she was determined not disabled, which means that she had the ability to perform full service. Well, you would agree things change. I'm sorry, sir? You would agree that things change over tenure. Things can change. Right. And then she submitted the interrogatories that indicate that she has lupus, internal disease, and I believe there was other correspondence where she references the fact that she's been diagnosed with lupus, which is a degenerative, she suffers from a chronic autoimmune disease that restricts my abilities to perform the duties as a police officer. Later she submitted answers to the interrogatories and the request to produce, again, referencing an answer to a question, describe fully the sicknesses, illnesses, injuries, physical or mental, of which you are complaining, and fully describe the parts of the body involved or affected, physical, low back, and lupus, internal disease. Now, that was all done prior to the ultimate board decision. That is correct. And prior to her having Mr. Moran represent her and submit a detailed memorandum setting forth his position that she has a condition currently that is rendering her, in her opinion, unable to perform her duties. Lupus. As it affects her back. And she has acknowledged very clearly that if she's going to claim for lupus, she's going to file a new application. Well, let me ask you, there's experience in case law indicates that in the process of hearing disability claims, regardless of how it's labeled, that certainly a pension board could say, yes, based upon the evidence you're asking for a duty disability, but we find it's not duty related, but we can find that you are disabled. We can award you, I think it's under section 115 maybe of the pension code. 115 of the code is the annual examination, also the certification of three physicians. That's correct. You are correct. But also, so that the board can say after hearing everything, even though you, the officer, think you are disabled related to your duty activities, we don't believe so. We think the evidence supports a disability claim, not duty related, and may, if the evidence supports it, award a disability at a lower percentage of the officer's salary. You are correct. The board has that alternative to do that, and many times it's asked if you want to amend your application and request an alternative non-duty. In this case, I think she made it very clear she was proceeding on the duty, she was proceeding on the basis that she was dissatisfied with the previous decision of the board back in 2000. And the board, Your Honor, gave her every opportunity, every opportunity to be represented by counsel, which she was at that time, but she wanted to proceed by herself. But this was all pre-hearing. This was all preliminary to whether we, the board, are going to get into hearing evidence. In other words, you didn't have the opportunity to hear evidence. It was before we even go that far, we're going to decide whether this is a rehashing of the old claim or a new claim. And the board decided, based upon the correspondence, the interrogatories, the application, the brief of Mr. Moran, the arguments that you made on behalf or to your board, if I remember properly so, that they concluded it was a rehash, basically, of the 2000 decision that was affirmed in the circuit court. That is correct. They did. Yes. And that's because there was nothing more before the board at that time, even though, as I say, when we throw in everything, there was nothing more before the board. So when we get into the issue of saying, well, let's send her off for examination, what are we sending her off on examination to determine what the injury was back in 2000? There's nothing that indicates at that particular time that she is now suffering from a current condition except for the lupus, which she has very clearly stated she's not looking for that now. If she's looking for it, she'll file a new application once she determines what happens on this case. But she could have pursued it on the current application, could she not? And then after presentation of her evidence, the board could say, well, you know, I know you feel that way, but we feel that you're disabled but not duty-related. We'll perhaps award you a non-duty disability. I think if the board does that in these cases, Your Honor, I think then that indicates that the board is always going to carry the burden to assume that you're currently disabled or currently requesting a claim for current disability. I think it has to be somewhere stated so that the board can start the matter rolling, which is basically the application. And there was no... Interrogatories in the request. Yes, and there's nothing in the application. If we look at the interrogatories, number 22, I believe, of the interrogatory, state that there's no aggravation of a preexisting situation. She again reverts back to the 98 claim, which she's dissatisfied about. So the lupus is a separate issue, and that's why it was raised when she was before the board. Are you requesting the lupus? And she says, no, I'm not. I'll file a new application on that. What about the memorandum? The board reviewed the memorandum, obviously gave her an opportunity to have her counsel present at the hearing. He filed the memorandum. After considering the memorandum, the board believed that there was nothing more that shed any light on it, that we believe that the first time that this was actually raised as far as changes to circumstances, identifying what those might be, was raised before the circuit court. And from that standpoint, the belief is that she waived it. Is she still an officer? It's not in the record, but she's effectively retired. She had the years for retirement. Well, she's effectively retired. She is retired. Yes? Collecting a retirement benefit now, yes, retirement. So 24 years, 50 years of age, you can get a retirement. Right. So today she couldn't file an application for a non-duty disability pension, could she? You're correct. The law is very clear that once you have severed your service from the department, or it's been severed, that you're no longer a police officer or a firefighter, as the case may be. And at that point of time, the board would have no jurisdiction of her. So what you're saying is today, could she file for a non-duty disability pension? Not at this particular time, no. So what's the effect if this case were reversed? What's the effect? In other words, if this court ruled that the board was wrong, that they should have given her a hearing to determine these issues, and it was remanded back to the board, are you saying that the board has nothing to do because she's no longer with the department? No. No, that would not be the case. If the court would reverse this and remand it back to the board, we would have to assume that that application is still effective and proceed on it accordingly. Whatever the board might conclude or determine after a full hearing on the matter or the evidence or the medical, whether that can be done at this stage. But, no, it would revert back to that period of time, so it would be a viable application. Even though she's no longer with the department? Yes, sir. Okay. Yes, sir. And, theoretically, her benefits, theoretically, if she proved her case, her benefits would be more than what she's getting now? Well. I know this is all outside the record, but I'm wondering whether we're dealing with a moot situation. With my qualification that it's not in the record, but I would also say that there are other collateral matters out there as to why this proceeded on disability, why not retirement, et cetera. So it's somewhat of a convoluted. So it's not moot. Would you agree or disagree? Yes. If it's remanded back to the board, and I'm not saying it would be, but I'm just saying it's not a moot issue? I would have to assume, as the law clearly states, that if it's remanded, you'd have to look at that application, which was filed before the effective date, if it was filed before the effective date of retirement, which I'm presuming it was at this particular state without being held to that. But, yes, if that be the case, then it's the effective date of the application being filed. Thank you. Do you have anything further? Yeah. As I said, I believe that the light duty issue is a misunderstanding of what the circuit court said, with the understanding that that, of course, is dictum. You can always file another application. But the fact is light duty was never a consideration. And at one point she says she's been working light duty, and there's no permanent light duty, but yet she's been working supposedly that position for 12 years. The board determined in 2000 light duty was not an issue, and it can't be. She was determined to be able to perform full service for the department. Whether the municipality put her on light duty or desk job, we don't really know the situation, and that's not the board's concern. The board determines disability. I just want to wrap up just basically saying that I believe if we allow these applications to stand to reclaim what has basically been determined by a board and affirmed by the circuit court over 10, 12 years ago to refile these based upon basically the same injury, the same accident, same dates, no new medicals, et cetera, then this basically impedes the boards to monitor the solvency of their funds. They'll never know from one day to the next how many of these claims are going to come back to haunt them from that standpoint. It's the board's position in this case, Your Honors, that there's been no change of circumstances in this particular matter with the exception of the evolution of time here. Thank you. Thank you, Mr. Ecklund. Mr. Cicic, do you have some brief rebuttal? Yes. Why don't you address the mootness issue? I'm not fully cognizant of all the facts relating to the facts outside the record here. My understanding, my understanding, and it is an understanding, it is not premised upon specific facts, but my understanding is that she would make more money if this pension were awarded than she's currently getting now. But that is my understanding. So if the case were remanded, they would treat this application as though it were filed March 5, 2011? That's my understanding. Do you know the date she retired? I do not know the date she retired. And as he indicated, for all I know, she may not have retired officially. It may be an effective retirement, a constructive retirement. I don't know. And that's outside the record, and I just don't know it. To address counsel's points, first of all, I'd like to bring up the light duty issue. We're not claiming right now that light duty is an issue. We feel that she's disabled. Disability does not rely, and counsel has indicated, and we agree, that disability does not rely on light duty or not light duty. She's disabled. Again, that doesn't address the threshold issue of does the board have jurisdiction. He's indicated that her letters to the board reflect that she was dissatisfied with the 2000 ruling. That's irrelevant as to whether or not she's disabled now or whether she's asserting a disability at the present. You can be unhappy with that and still assert a new claim. And he has indicated, and that sort of raises this interesting point, he's claimed that this would prove to be an impediment to board solvency because he never knew when one of these things was going to flare up again. The issue here is they don't dispute that if she's disabled now, she could have brought a claim. His claim, his complaint is, well, she never actually said or has presented any kind of evidence that she is disabled now. We say that she has. That doesn't change the dynamic about whether or not the board would be able to foresee this because as long as somebody had the ability to say, I'm disabled now, they would be able to do this. And that's not going to affect the board's solvency. They have that inherent power now. Also, he was claiming that the issue with regard to, there was no evidence in the record that there's anything new or any evidence of the lupus issue. First off, at the beginning, in interrogatory number 4, which I believe is, let me see, is it C-155? 149. Okay. In the appendix. Let me see if it's 147. I apologize. 149A-149. Describe fully the sickness, illnesses, or injuries, i.e., physical or mental, of which you are complaining and fully describe the parts of the body involved or affected. Physical, lower back, lupus, internal disease. So we see she's referencing the lupus. We see just above it, 3, please state the date and time of the occurrence of the injuries or illnesses for which you claim a disability. March 28, 1998, which is when she injures her back, and January 2010. So, again, there is a reference. Something new has happened here. Interrogatory 21, which is A-153. Are you claiming that the current injury, illnesses, as alleged in support of your application, aggravated or exacerbated in any manner a previous injury, illness, disease, or condition? If the answer is yes, please identify fully the previous injury, illness, disease, or condition which you are alleging was aggravated in the manner in which the same was incurred. Yes, lifting a stretcher on a DOA on March 28, 1998. Here she's saying the 1998 injury exacerbates my, is the cause, is the exacerbation of my current injury. She's identifying, she's not saying this is my claim. She's saying this is an aspect of it. It's exacerbated by the claim I'm making now. There was some question with regard to when these interrogatories were submitted. My understanding, which may be wrong, was that they were submitted at the same time as the amended application. I should point out, irrespective of that, the board considered them when they made their November 18th, their ruling on this, on whether or not they had jurisdiction. So, I mean, these were considered, irrespective of when they were presented to the board, they were considered as part of the evidence that they used to decide, did she make a claim? And my last point with respect to the lupus, it doesn't have to be, it assumes without explaining the lupus diagnosis, either it's a separate, independent basis for the pension claim, or it's got to be a factor to her current disability. It can't be both, and there's no reason it can't be both, although there may be other reasons why she could not bring a lupus claim presently. She claimed in her application, not in her application, in her interrogatories, that it was a contributing factor to her current disability, and she's ultimately barred from it, it wouldn't preclude her, irrespective of other factors, from seeking a non-duty pension based on the lupus alone. Counsel for defendants stated as much, and C-128-129, which I think would be A-30, I would render this thought, and that is, if there is a current request for disability based on lupus or something of that nature, then certainly, as long as you are a police officer, it would not preclude you from filing such an application. Then the board would proceed, based upon a statute for examination of three physicians, et cetera, on that. So she was free to argue it's a contributing factor, and she did so. She's free, irrespective of other factors, she would be free to argue it as the basis for a separate claim for a non-duty disability pension if her line of duty claim was denied. And in the end, we basically feel that the board should try, to the degree that there is evidence that this is not simply asking for a rehash of the 1999 claim, that she's saying things have changed. There's been 11 years of degeneration in my condition that has rendered me presently disabled, even if I wasn't disabled back in 2000. There's other factors that have contributed to me being presently disabled, like I wasn't in 2000. The board should read those in such a way to give itself jurisdiction here. It should not try to deny itself jurisdiction. It should not look for a way to apply res judicata collateral estoppel. Again, it's because we feel it's not the same claim, but again, the law presumes that you will give the applicant the benefit of the doubt. Thank you. For those reasons, you're asking us to reverse the decision? For those reasons, I'm asking today that the court reverse both the board's dismissal of the 2011 application for the line of duty pension and the circuit court's affirmation of that decision. Thank you. All right. Mr. Cicic, Mr. Atwell, I want to thank the two of you for your arguments and for the briefs. This matter will be taken under advisement, and this court stands in recess.